UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

BENDU HAYNES,                                            :
        Plaintiff,                                        :
                                                          :
        v.                                                :     No. 5:25-cv-4992
                                                          :
READING HOSPITAL,[1]                                    :
        Defendant                                         :
                                                          :
_____

**O P I N I O N**
Motion to Dismiss, ECF No. 8 - Granted in part, Denied in part

**Joseph F. Leeson, Jr.**                                                                  **January 21, 2026**
**United States District Judge**

## I. INTRODUCTION

Plaintiff Bendu Haynes initiated this action against her former employer, Defendant Reading Hospital, alleging employment discrimination based on her race and disability. Reading Hospital filed a Motion to Dismiss the Complaint. For the following reasons, the Motion to Dismiss pre-resignation claims, which is based solely on a release in a disputed Release Agreement, is denied because the Release may not be considered at this stage of the proceedings. The Motion to Dismiss post-resignation claims for failure to state a claim is granted.

## II. BACKGROUND

### A.   Factual Allegations

Haynes was hired by Reading Hospital as a registered nurse ("RN") in October 2017. Compl. ¶ 10. On March 3, 2023, Haynes sustained a left-hand fracture while transferring a

---

[1] Reading Hospital is incorrectly identified in the Complaint as "Reading Hospital (Tower Health)." *See* Brief 1 n.1, ECF No. 8-1.

patient. *Id.* ¶ 12. Between November 13, 2023, and February 3, 2024, Haynes worked full assignments on eight separate dates, allegedly demonstrating that she could perform RN duties with reasonable accommodations. *Id.* ¶ 13.

On February 6, 2024, Reading Hospital denied Haynes an incentive shift/payment because she was on workers' compensation and could not exceed 40 hours. *Id.* ¶ 17. A white colleague was permitted the incentive opportunity. *Id.* ¶ 18. Reading Hospital afforded a "white RN comparator," who had arthritis, a BLS/CPR accommodation. *Id.* ¶ 19. Haynes alleges that Reading Hospital downplayed BLS/CPR as non-essential but found Haynes's lifting/boosting restrictions as disqualifying even though not all rehab patients require heavy transfers. *Id.*

On February 8, 2024, and again on April 12, 2024, Reading Hospital removed Haynes from work and instructed her to stay at home, instead of providing accommodation requests consistent with her restrictions.[2] *Id.* ¶ 14. Haynes's supervisors were not consistently informed of her restrictions. *Id.* ¶ 15. Haynes was warned that she would be sent home if she raised her restrictions, allegedly undermining the interactive process. *Id.*

On April 26, 2024, Reading Hospital offered Haynes a reassignment to Infection Preventionist at a lower rate of pay and different schedule, which was incompatible with her weekend-night role. *Id.* ¶ 16. Haynes declined the offer. *Id.* Haynes resigned effective August 2024, allegedly due to Reading Hospital's threats to send her home for raising restrictions and failure to provide accommodations. *Id.* ¶¶ 20-21.

Haynes completed EEOC intake on March 10, 2024, was interviewed on July 24, 2024, and filed her charge on August 18, 2024. *Id.* ¶ 22. In August 2024, Reading Hospital presented

---

[2] The Complaint fails to specify what accommodations Haynes requested or define her restrictions.

her with a "General Release & Resignation Agreement, which required her to resign her employment and release all claims. *Id.* ¶ 23. Haynes refused to sign.[3] *Id.*

Haynes "later secured a third-party tort recovery" on which her workers' compensation carrier asserted a lien. *Id.* ¶ 24. The lien ($178,471.02) exceeded the amount of her award ($155,507.05). *Id.* In February 2025, her workers' compensation carrier agreed to accept a lower amount, which it and Reading Hospital "attempted" to condition on Haynes's agreement to withdraw her EEOC charge and release all civil-rights claims. *Id.* ¶¶ 24-25. Haynes does not allege whether she agreed to (signed) the release, but it is reasonably inferred from the allegations that she did not sign this "proposal." *See id.*[4] The Complaint attaches an "excerpt" from the February 2025 release. *See id.* at Ex. 2.[5] This excerpt does not specifically require Haynes to withdraw her EEOC charge; rather, it states that the parties "desire to resolve all existing claims . . . without resort to further proceedings." *Id.*

On July 29, 2025, the EEOC decided not to proceed further with its investigation, made no determination regarding merit, dismissed the charge, and issued a right-to-sue letter. *See id.* at Ex. 1.

---

[3] Reading Hospital attaches to its Motion to Dismiss a copy of a Release from August 2024. *See* August Release, ECF No. 8-3. The Release appears to be signed by Haynes (Releasor) and counsel for Reading Hospital. Although there are two signature lines in the Release for a witness, no witness signed the Release. On one of the witness signature lines, which is next to Haynes's signature, the date "8/12/24" is written. Immediately above those lines, however, the Release is dated August 13, 2024.

[4] This correctness of this inference is confirmed by Reading Hospital's brief. *See* Brief 24 (stating that "she declined the offer").

[5] The "excerpt" in Exhibit 2 is not a photocopied excerpt from an actual release; rather, it is a page containing a typed quote purportedly from a February 2025 release. *See* Compl. Ex. 2, ECF No. 1-1. This quote is not contained in the August 2024 Release, which Reading Hospital attached to its Motion to Dismiss. *Cf. id. with* August Release. The Motion to Dismiss makes no mention of a February 2025 release, nor is there any evidence of such a release in the record.

B.     **Procedural History**

On August 27, 2025, Bendu Haynes filed a pro se Complaint against Reading Hospital for employment discrimination. Compl., ECF No. 1. Attached to the Complaint are copies of the EEOC denial and right-to-sue letter, as well as an excerpt from a Settlement and General Release in February 2025. *See id.* at Exs. 1-2. The Complaint identifies five counts: (I) Retaliation in violation of Title VII[6] and the ADA;[7] (II) Interference, Coercion, Intimidation in violation of the ADA, 42 U.S.C. § 12203(b); (III) Race Discrimination in violation of 42 U.S.C. § 1981; (IV) Race Discrimination in violation of Title VII and the ADA; and (V) Disability Discrimination / Failure to Accommodate in violation of the ADA and PHRA.[8] *See* Compl. ¶¶ 28-49. However, these claims are broadened elsewhere in the Complaint. *See id.* at ¶¶ 1-2. Liberally construing the Complaint, this Court finds that Haynes' claims based on post-resignation conduct are retaliation in violation of Title VII, the ADA, and the PHRA, a violation of § 1981, and ADA interference.

On October 10, 2025, Reading Hospital filed a Motion to Dismiss on three grounds. *See* Mot. and Brief, ECF No. 8. First, Reading Hospital argues that all of Haynes's pre-resignation claims are barred by the Release she executed on August 12, 2024. *See id.* at 13-18. Second, Reading Hospital asserts that Haynes fails to state a claim for all post-resignation claims. *See id.* at 18-27. Third, Reading Hospital contends, alternatively, that Haynes's post-resignation claims are deficient for her failure to exhaust administrative remedies. *See id.* at 27-30. Haynes filed a brief in opposition to the Motion to Dismiss on October 23, 2025. *See* Opp., ECF No. 11.

---

6      Title VII of the Civil Rights Act of 1964
7      Americans With Disabilities Act ("ADA")
8      Pennsylvania Human Relations Act ("PHRA")

## III. LEGAL STANDARDS

### A. Motion to Dismiss, Rule 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be

considered" (internal quotations omitted)); *Pulukchu v. Hadco Metall Trading Co.*, No. 13-cv-4839, 2014 U.S. Dist. LEXIS 82758, at *7 (E.D. Pa. June 18, 2014) (explaining that "with regard to employment discrimination cases, the court may consider both the right to sue letter and the charge of discrimination when deciding a motion to dismiss"). Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The defendant bears the burden of demonstrating that the plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). As Haynes is proceeding pro se, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

      **B.    Retaliation under Title VII, the ADA, and the PHRA**

Federal law prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes or because the employee made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). To establish a prima facie case of retaliation under Title VII, the ADA, and/or the PHRA, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Boykins v. SEPTA*, No. 17-1980,

2018 WL 460652, at *2, *6 (3d Cir. 2018) (analyzing claims under Title VII and the PHRA the same).

Pursuant to the first element, "[w]ith respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id.*

As to the second element, a plaintiff must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 341 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Under the third element, a plaintiff must show a causal connection between the protected activity and the retaliatory act. *Moore,* 461 F.3d at 341-42. Because there is no single, definite way of showing causation, the court must look at the evidence "as a whole" to determine if retaliation has been sufficiently pled. *See Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)). However, "for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (explaining that "a prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim" (internal quotations and citations omitted)). "Instead of requiring a prima facie case, the post-Twombly pleading

standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Id.* at 789 (internal quotations and citations omitted).[9]

### C.   42 U.S.C. § 1981

Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]o establish a basis for relief under section 1981 a plaintiff must show '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981.'" *Estate of Oliva*, 604 F.3d at 797 (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)).  Section 1981 enumerates the following activities: the right to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a).

"In employment discrimination cases, [§ 1981] claims are subject to the same analysis as discrimination claims under Title VII of the Civil Rights Act of 1964." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017).  "The central focus in a discrimination case is "whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15. (1977)).

### D.   ADA Interference

Section 503 of the ADA provides:

---

[9]   "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate non-retaliatory reason for its conduct. If an employer advances such a reason, a plaintiff then must show that the proffered reason was a pretext for retaliation." *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788, 798 (3d Cir. 2010).

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

42 U.S.C. § 12203(b). The Third Circuit has not identified the elements required to state a claim under § 12203(b). *See Cori's Place v. Zoning Hearing Bd.*, 714 F. Supp. 3d 471, 482 (M.D. Pa. 2024); *EEOC v. Geisinger Health*, 2022 U.S. Dist. LEXIS 188749, at *50 (E.D. Pa. 2022) ("There is scant case law on ADA interference claims."). "Cases from other Circuits have adopted the test for anti-interference claims under the Fair Housing Act, 42 U.S.C. § 3617." *Piotrowski v. Signature Collision Ctrs., LLC*, No. 2:21-cv-02115-JDW, 2021 U.S. Dist. LEXIS 194688, at *5 (E.D. Pa. Oct. 8, 2021). District courts in this Circuit have also applied the standard for § 3617 interference claims. *See, e.g. id.*; *Geisinger Health*, 2022 U.S. Dist. LEXIS 188749, at *50; *Cori's Place*, 714 F. Supp. 3d at 482. "A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed 'any right granted or protected by [Section 12203(b)]; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112-13 (3d Cir. 2017) (internal quotations omitted); *Bainbridge v. Bondi*, No. 3:21-CV-1895, 2025 U.S. Dist. LEXIS 131650, at *21 (M.D. Pa. July 11, 2025). These elements are applied to the § 12203(b) claim here.

IV.   **ANALYSIS**

   A.   **The Motion to Dismiss pre-resignation claims is denied because the Release is not part of the record in this Motion to Dismiss.**

Haynes alleges that she refused to sign a release in August 2024. *See* Compl. ¶¶ 22-23. The signed August 2024 Release attached to the Motion to Dismiss is therefore disputed and

may not be considered at the motion to dismiss stage. *See Mayer*, 605 F.3d at 230 (holding that in deciding a motion to dismiss, the court may consider "*undisputedly authentic documents* if the complainant's claims are based[10] upon these documents" (emphasis added)); *Elliot v. Ortiz*, No. 21-0291, 2024 U.S. Dist. LEXIS 104430, at *10 (D.V.I. June 12, 2024) (explaining that "'[w]here there is a dispute as to the accuracy of a document, even if it is incorporated by reference into or integral to a complaint, a court may not consider it on a motion to dismiss for failure to state a claim'" (quoting *Lee v. Hudson Police Detective Sergeant Finn*, 2023 U.S. Dist. LEXIS 184152, at *11 (N.D.N.Y. Oct. 13, 2023)). *See also St. Louis v. New Hudson Facades, LLC*, No. 23-cv-4516, 2024 U.S. Dist. LEXIS 55841, at *4-7 (E.D. Pa. Mar. 28, 2024) ("General releases that may provide defense to a lawsuit are usually not 'integral' documents appropriate for review at the motion to dismiss stage."). "[R]eview of releases, when the discrimination claims are unrelated to that release, is proper for summary judgment, not motions to dismiss." *St. Louis*, 2024 U.S. Dist. LEXIS 55841, at *5. Because Haynes's signature on the Release is disputed, this Court will not convert the Motion to Dismiss into one for summary judgment. *See id.* at *6-7 (declining to convert the motion to dismiss into a motion for summary judgment because discovery was necessary to determine whether the release of employment discrimination claims was knowing and voluntary); *Jackson v. Temple Univ.*, No. 20-1421-KSM, 2021 U.S. Dist. LEXIS 183971, at *18 (E.D. Pa. Sep. 27, 2021) (refusing to convert the defendant's motion to dismiss the employment discrimination complaint into one for summary judgment to consider

---

[10]   Haynes's pre-resignation discrimination claims are not based on the Release. *See Pension Benefit Guar. Corp*, 998 F.2d at 1196 (holding that courts may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's *claims are based on the document*" (emphasis added)); *St. Louis v. New Hudson Facades, LLC*, No. 23-cv-4516, 2024 U.S. Dist. LEXIS 55841, at *4 (E.D. Pa. Mar. 28, 2024) ("Plaintiff alleges that Defendant discriminated against her based on her race, national origin, and disability; the release is not the basis of her claim.").

the Compromise and Release Agreement because "open fact questions render[ed] summary judgment on this issue inappropriate at this time"). The Motion to Dismiss pre-resignation claims based on the Release is therefore denied.[11]

### B.   The post-resignation claims are dismissed for failure to state a claim.

Reading Hospital moves to dismiss all of Haynes's claims based on post-resignation conduct. These claims, liberally construed, include retaliation in violation of Title VII, the ADA, and the PHRA, a violation of § 1981, and ADA interference. These claims are based on alleged conduct occurring in February 2025, regarding settlement discussions involving the lien on Haynes's workers' compensation award, which Reading Hospital attempted to condition on her withdrawal of the EEOC charge and release of civil-rights claims.

#### 1.   Retaliation Claim

Reading Hospital contends that Haynes did not engage in any protected activity with respect to her post-resignation claims because refusing to sign a release is not protected. *See* Brief 12, 21-22. Although refusing to sign a release is not protected activity, *see Allstate Ins. Co.*, 778 F.3d at 452,[12] Haynes did engage in protected activity when she filed a charge of discrimination with the EEOC in August 2024, the same month she resigned from Reading

---

[11]   Because Reading Hospital relies solely on the Release and does not argue, in the alternative, that the pre-resignation claims fail to state a claim, Haynes has not had an opportunity to address this issue. Accordingly, this Court may not consider the merits of these claims sua sponte. *Accord Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990) (holding that "there are times when a court may sua sponte raise the issue of the deficiency of a pleading under Rule 12(b)(6) provided that the litigant has the opportunity to address the issue either orally or in writing").

[12]   *See also Lanza v. Postmaster Gen. of the United States*, 570 F. App'x 236, 241 (3d Cir. 2014) ("Filing a claim for workers' compensation does not constitute protected activity under either the Rehabilitation Act or Title VII."). *But see Kieffer v. CPR Restoration & Cleaning Servs., LLC*, 733 F. App'x 632, 639 (3d Cir. 2018) ("Under Pennsylvania law, however, requesting worker's compensation is a protected activity.").

Hospital. *See Sessoms v. Trs. of the Univ. of Pa.*, 739 F. App'x 84, 89 (3d Cir. 2018) (stating that filing a charge of discrimination with the EEOC is protected activity). Because this charge was still pending in February 2025, the protected activity element is satisfied. The Complaint fails, however, to allege any adverse action.

"When the alleged retaliation occurs after an employee has been terminated, the plaintiff must allege that the action was materially adverse and thus would dissuade a reasonable employee from making a similar charge, because it caused harm to the plaintiff's employment opportunities; such plaintiff cannot succeed merely by alleging that the employer engaged in upsetting conduct if it did not affect their future employment prospects." *Hayes v. Saltz, Mongeluzzi & Bendesky, P.C.*, 652 F. Supp. 3d 537, 541-42 (E.D. Pa. 2023). Here, there are no allegations that Reading Hospital's actions in February 2025 harmed Haynes's employment prospects. The post-resignation retaliation claim therefore fails. *See Nelson v. Upsala Coll.*, 51 F.3d 383, 389 (3d Cir. 1995) (holding that the post-employment retaliation claim failed because the defendant's actions had no impact on any employment relationship that she had or might have in the future); *Haplea v. Plumsteadville Pub., LLC*, No. 23-cv-01117-RAL, 2023 U.S. Dist. LEXIS 164998, at *13-14 (E.D. Pa. Sep. 18, 2023) (dismissing the post-employment retaliation claim because there were no allegations that the plaintiff's employment prospects were harmed as a result of the alleged incident or that any prospective employers were even aware of the incident).

Haynes's reliance on the district court's decision in *Sundance* for the position that an employer's attempt to secure an EEOC waiver is retaliatory is misplaced because that decision was reversed by the Sixth Circuit Court of Appeals. *See EEOC v. Sundance Rehab. Corp.*, 328 F. Supp. 2d 826, 838 (N.D. Ohio 2004) (determining that when "an employer requires an

employee as part of a separation agreement to give up her right to file a charge with the EEOC in exchange for severance benefits, the employer violates the anti-retaliation provisions of the laws enforced by the EEOC"), *rev'd by* 466 F.3d 490, 500-01 (6th Cir. 2006) (holding that an employer's offer of a settlement agreement that includes release of EEOC claims is "not facially discriminatory" and does not "amount[] to a facial violation of the antiretaliation provisions of the equal employment opportunity statutes"). The Sixth Circuit's decision (that an employer's offer of settlement requiring release of EEOC claims is not facially retaliatory) is consistent with the law in the Third Circuit.[13] "The Supreme Court and the Third Circuit Court of Appeals have never recognized a facial retaliation claim stemming from [the waiver] provision of the ADEA." *DeCecco v. UPMC*, 3 F. Supp. 3d 337, 392 (W.D. Pa. 2014). A court in this district held that offering to settle a workers' compensation claim conditioned on the employee's withdrawal of an EEOC charge "is not prohibited." *Orzech v. Muhlenberg Twp.*, No. 5:18-cv-03938, 2020 U.S. Dist. LEXIS 201368, at *15 (E.D. Pa. Oct. 28, 2020) ("While Orzech does allege that the offer [to settle his workers' compensation claim] was conditioned on him relinquishing the EEOC Charge, this is not prohibited.").

There is a "well-established rule that employers can require terminated employees to waive existing legal claims in order to receive unearned post-termination benefits." *Allstate Ins. Co.*, 778 F.3d at 453 (concluding that the employer did not violate federal anti-retaliation laws by requiring its employees to sign a release in order to avail themselves of the option of becoming independent contractors post-employment). "Nothing in the employment-discrimination statutes

---

[13]     *See also EEOC v. CVS Pharmacy, Inc.*, 809 F.3d 335, 341 (7th Cir. 2015) ("Several circuit courts, including ours, have held that conditioning benefits on promises not to file charges with the EEOC is not enough, in itself, to constitute 'retaliation' actionable under Title VII." (citing cases))

undermines this rule." *Id.* at 449. Although courts have recognized a difference between a release of legal claims and a release of administrative claims before the EEOC, *see Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 291 (3d Cir. 2003) (explaining "that EEOC charges are distinct from typical employee claims against an employer in that their purpose is not to seek recovery from the employer but rather to inform the EEOC of possible discrimination" (internal quotations omitted)), the difference is not relevant here, *see id.* at 289 ("At most, the statutory language [in the ADEA] can be read to mean only that a provision that purports to, for example, alter the EEOC's rights to pursue and investigate a claim that is filed, is unenforceable.").

Merely "offering a[n] agreement with unenforceable terms is not sufficient to constitute adverse employment action under the [discrimination statutes]." *DeCecco*, 3 F. Supp. 3d at 392-93 (finding no adverse action in the employer's mere offer of an agreement that would require the employee to withdraw a charge filed with the EEOC). "[A]ny attempt by an employer to *enforce* a contractual provision prohibiting an employee from filing a charge or participating in an EEOC investigation would be ineffectual, but there is no indication that the mere presence of that contractual language would void an otherwise knowing and voluntary waiver." *Wastak*, 342 F.3d at 290 (emphasis in original)). Here, Haynes does not allege that Reading Hospital attempted to enforce an agreement that she release her EEOC claim, as there was no agreement executed, only an offer made. Haynes therefore fails to show adverse action in the settlement offer.

Haynes also fails to show adverse action for her rejection of the settlement offer because she was not entitled to a settlement of her worker's compensation claim. *See Orzech*, 2020 U.S. Dist. LEXIS 201368, at *15 (determining that the employer had no duty to make a settlement

offer as to the worker's compensation claim; "therefore, the revocation of any offer prior to acceptance is not an adverse action"). Furthermore, there was no benefit (money from the workers' compensation award) withheld from Haynes because she declined the settlement offer and the lien exceeded her award. *See Haaijer v. Omnova Sols., Inc.*, No. 3:18-CV-942, 2018 U.S. Dist. LEXIS 213681, at *21-22 (M.D. Pa. Dec. 18, 2018) ("An employer may not, however, *withhold standard employee benefits* because an employee has refused to waive his rights under the anti-discrimination statutes." (quotations omitted)). Haynes therefore fails to show adverse action by rejecting the offer. *See Allstate Ins. Co.*, 778 F.3d at 452 (holding that "an employer [does not] commit[] an adverse action by denying an employee an unearned benefit on the basis of the employee's refusal to sign a release").

Moreover, even if Haynes had shown adverse action, the allegations are insufficient to establish a causal connection between the protected activity (filing an EEOC charge in August 2024) and the alleged adverse action in February 2025. To state a retaliation claim under the employment discrimination statutes, "temporal proximity must be 'very close'." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The six-month gap here is not sufficiently close. *See id.* (citing a case that determined a three-month gap between the employer's knowledge of protected activity and an adverse employment action was insufficient evidence of causality to establish a prima facie case); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (finding that over two months is not so close as to be unduly suggestive of causation).

The post-resignation retaliation claims are dismissed with prejudice.[14]

---

[14] For the reasons discussed herein, the Court finds that leave to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend

2. **Section 1981 Claim**

Assuming arguendo that settlement negotiations are activities enumerated in § 1981, *see Broomes v. Schmidt*, No. 95-4845, 1996 U.S. Dist. LEXIS 18522, at *6 (E.D. Pa. Dec. 13, 1996) (determining that § 1981 "encompasses a party's racially motivated refusal to enter into a settlement agreement"), Haynes fails to show, or even allege, that the settlement offer was based on racial discrimination. The Complaint only alleges racial discrimination in connection with her pre-resignation claims. *See, e.g.* Compl. ¶ 3 (alleging that Reading Hospital treated Haynes differently than "white comparators" forcing her resignation) and ¶ 40 (alleging that Reading Hospital treated white employees more favorably regarding "access to incentive shifts and accommodations"). Moreover, "it is common practice in a settlement agreement and release for a plaintiff to release all claims against defendant as part of the consideration for settlement," *Douris v. Hopewell Twp.*, No. 10-2650, 2012 U.S. Dist. LEXIS 18015, at *4 n.2 (D.N.J. Feb. 14, 2012), which would negate any suggestion that the inclusion of the release in the settlement offer here was due to an intent to discriminate based on race. *See Broomes*, 1996 U.S. Dist. LEXIS 18522, at *5-8 (finding that the plaintiff failed to substantiate her claim of disparate treatment by defendant to establish a prima facie case and that, regardless, she made no allegations from which one reasonably could find that the proffered reason for not settling with the plaintiff was false or pretextual).

The post-resignation § 1981 claim, if any, is dismissed with prejudice.[15]

---

"must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment").

[15]   For the reasons discussed herein, this Court finds that leave to amend would be futile. *See Grayson*, 293 F.3d at 108.

### 3. ADA Interference Claim

As with the retaliation claim, the only protected conduct at issue in her post-resignation ADA interference claim relates to Haynes's filing of an EEOC charge in August 2024, which remained pending in February 2025. For the reasons discussed regarding the retaliation claim, as well as the § 1981 claim, a causal connection between the EEOC charge and settlement offer appears to be lacking. The allegations suggest that the timing of the settlement offer was connected to the timing of Haynes' workers' compensation award, not her pending EEOC charge. Regardless, Haynes has not shown "interference" with her right to pursue the EEOC claim.

"Interference" for the purposes of an interference claim is defined according to its dictionary definition as "the act of meddling in or hampering an activity or process." *Revock*, 853 F.3d at 113 (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001); *Webster's Third New Int'l Dict.* 1178 (14th ed. 1961)). Although "[i]nterference does not require force or threat of force. . ., the prohibition on interference cannot be so broad as to prohibit 'any action whatsoever tha[t] in any way hinders a member of a protected class." *Revock*, 853 F.3d at 113 (internal citations and quotations omitted). Here, aside from merely offering to accept a reduced amount on the workers' compensation carrier's liens if Haynes agreed to withdraw her EEOC charge, Reading Hospital did not hinder Haynes, nor did it engage in any intimidating or coercive tactics to attempt to secure a release. *See id.*; 42 U.S.C. § 12203(b) (prohibiting "[i]nterference, coercion, or intimidation"). Haynes's allegations therefore fail to state an ADA interference claim.

The ADA interference claim is dismissed with prejudice.[16]

## V.  CONCLUSION

The Motion to Dismiss pre-resignation claims, which is based solely on an allegedly executed Release, is denied because Haynes disputes that she signed the August 2024 Release, and it may not be considered at this stage of the proceedings.  Haynes's post-resignation claims are dismissed with prejudice for failure to state a claim.  The post-resignation retaliation claims are dismissed because contrary to Haynes's suggestion, a release of EEOC rights is not facially retaliatory.  Furthermore, Haynes did not suffer any adverse action as she was not denied any earned benefits.  She also fails to establish a causal connection between her EEOC charge and the settlement offer.  The lack of a causal connection requires dismissal of her post-resignation § 1981 claim.  This claim fails for the additional reason that there are no allegations that the settlement offer was based on race discrimination.  Finally, Haynes's ADA interference claim (Count II) is dismissed because Reading Hospital's mere settlement offer does not constitute interference for purposes of the statute.  Because the post-resignation claims are dismissed with prejudice for failure to state a claim, there is no reason to address Reading Hospital's alternative argument that Haynes failed to exhaust administrative remedies.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[16]  This Court finds that leave to amend would be futile.  *See Grayson*, 293 F.3d at 108.  Moreover, "[s]ettlement agreements and general releases . . . are to be encouraged, as they provide a fair, reliable, cost-efficient means of resolving discrimination cases short of litigation."  *Deily v. Waste Mgmt.*, 118 F. Supp. 2d 539, 542 (E.D. Pa. 2000) (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).  Subjecting Reading Hospital to civil liability for its mere offer would discourage parties from engaging in settlement negotiations.